The **TRAVELERS INSURANCE COMPANY, et al.,**
Plaintiffs,

v.

**Henry H. GOLDBERG, et al., Defendants.**

Civ. A. No. R–91–1837.

United States District Court, D. Maryland.

Jan. 10, 1992.

Ralph A. Taylor, Jr., Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for plaintiffs.

Cyril V. Smith, Zuckerman, Spaeder, Goldstein, Taylor & Better, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned case is defendants' motion for referral to the Bankruptcy Court. The issues have been fully briefed by both parties, and the motion will be decided without a hearing pursuant to Local Rule 105.6 (D.Md.1989). For the reasons set forth below, the motion will be denied.

### FACTS

This diversity action arises out of the nonpayment of various loans made by one or both of the plaintiffs to six different limited partnerships (the "debtor partnerships"). Each debtor partnership has as its general partner a limited partnership (the "holding partnerships") whose purpose is to serve as a general partner of a given debtor partnership. Defendants Goldberg, Geller, and Luria are the former general partners of the holding partnerships. In January of 1991, Goldberg, Geller, and Luria substituted defendant Phoenix Associates # 1, Inc., a Maryland Corporation, for themselves as the general partner of each holding limited partnership. Neither the

debtor partnerships nor their holding partnerships are parties to this action.

In January, 1991, the debtor partnerships filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Those cases are still pending.

The plaintiffs in this action are the principal creditors of the debtor partnerships. They seek to recover from the individual and corporate defendants on various state law theories, including breach of promissory note, guarantee, fraudulent transfer, and tortious interference with contract. The plaintiffs have filed a timely jury demand.

Defendants have moved the Court to refer this action to the Bankruptcy Court, arguing that the case is related to the debtor partnerships' Chapter 11 cases, that the Chapter 11 reorganization plan will be threatened if this Court retains the action, and that the goals of judicial economy would be served by a referral. The defendants dismiss the plaintiff's jury demand as a "tactical ploy," intended only to prevent adjudication of the merits of the dispute "in the proper forum." Plaintiffs, on the other hand, contend both that their jury demand renders defendants' motion moot, and that this action is not "related to" the bankruptcy cases.

### ANALYSIS

28 U.S.C. § 157(a) gives the District Court discretion to refer to the Bankruptcy Court any or all proceedings arising under the Bankruptcy Code, as well as those arising in, or related to, a case under the Code. *See In re Parklane/Atlanta Joint Venture,* 927 F.2d 532 (11th Cir.1991). Similarly, § 157(d) grants the District Court discretion to withdraw any case referred to the Bankruptcy Court.

In deciding whether to refer this case, the Court must first determine (1) whether this action is sufficiently "related to" the bankruptcy cases to permit a referral under § 157(a), and (2) whether and to what extent a referral is permissible at all in light of the plaintiffs' jury demand. If, after these issues are resolved, the Court finds that it has the discretion to grant defendants' motion, it must still decide whether a referral would be of practical benefit to the administration of the action.

### 1. "Related to" jurisdiction.

■ The prevailing test for determining whether an action is related to a pending bankruptcy case for purposes of 28 U.S.C. § 157(a) was stated by the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy ... Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

> On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b).

The Fourth Circuit has expressed approval for this test in dicta in *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1002, n. 11 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). The Court also quoted with approval law review commentary suggesting that an action may be "related to" a bankruptcy proceeding even if, as in this case, " 'neither the debtor nor a representative of the estate were a party.' " *Id.*, quoting Note, *Selective Exercise of Jurisdiction in Bankruptcy–Related Civil Proceedings,* 59 Tex.L.Rev. 325, 330–31 (1981).

It is clear that the outcome of this action may well have an effect on the administration of the estate. The action is based on debts which are the primary obligations of the debtor partnerships. A judgment for plaintiffs in this case would almost certainly result in attempts to alter the claim

structure in the bankruptcy cases. A judgment for either side could clearly have an effect on the ability of the estate to pay the remaining creditors. Further, a judgment on the fraudulent transfer claims in this action could have *res judicata* effect on certain claims and motions now pending in the bankruptcy cases.

Plaintiffs' argument that the cases are not related is based on an attempt to show that the outcome of this action will not affect the debtors' net obligations. This approach, however, addresses only part of the disjunctive test in *Pacor*, which expressly considers the impact on the debtor's options, freedom of action, and *any* impact upon the handling and administration of the estate. The Court therefore finds that this action is related to the bankruptcy cases as contemplated by the *Pacor* test, and that it has discretion under § 157(a) to grant the referral.[1]

### 2. Core proceedings.

■ A key factor guiding the Court's exercise of discretion in deciding whether to refer a case to the Bankruptcy Court is the extent to which the Bankruptcy Court would be able to function independently, and thereby avoid duplicative expenditures of judicial resources. This question is largely controlled by 28 U.S.C. § 157, which divides proceedings before the Bankruptcy Court into two categories: core and non-core. Section 157(b)(1) gives the Bankruptcy Court the power to enter "appropriate orders and judgments" in core proceedings, subject only to appellate review by the District Court. In non-core proceedings, however, the Bankruptcy Court's role is greatly limited by § 157(c)(1). Unless the parties consent to the referral, the Bankruptcy Court in a non-core proceeding may not enter dispositive orders or judgments, but must instead submit to the District Court proposed findings of fact and conclusions of law which are subject to *de novo* review. Thus the practical effect of § 157(c) in non-core cases is to require the District Court to familiarize itself with the entire factual record whether or not it refers the action.

■ Proceedings which neither invoke a substantive right provided by the Bankruptcy Code nor are central to the Bankruptcy Court's role in administration of the estate are generally classified as non-core under 28 U.S.C. § 157. *See In re J.T. Moran Financial Corp.*, 124 B.R. 926, 929 (Bankr.S.D.N.Y.1991). In this case, not only is the relief sought based solely on state law,[2] but no representative of the estate is a party. Courts have repeatedly found that actions by creditors against third party guarantors of the debtor's debts are not core proceedings. *See, e.g., In re Watson–Mahaney, Inc.*, 70 B.R. 578 (Bankr.N.D.Ill.1987); *In re Showcase Natural Casing Co.*, 54 B.R. 142 (Bankr. S.D.Ohio 1985). The Court finds that if this case were referred to the Bankruptcy Court, it would have to be treated there as a nonconsensual referral of a non-core proceeding.

### 3. Plaintiff's jury demand.

■ It is beyond question that the mere fact that this action is "related to" the bankruptcy cases does not operate to deprive plaintiffs of their right to a jury trial. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 53, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26 (1989). Plaintiff's jury demand is therefore not an inconsequential "tactical ploy"—it is a valid assertion of a Constitutional right whose practical procedural consequences must weigh heavily in deciding whether to refer the case. While the Court has concluded that the Bankruptcy Court has subject matter jurisdiction, a referral

---

1. Defendants contend that Local Rule 402 (D.Md.1989), requires the Court to refer all cases related to a pending bankruptcy case to the Bankruptcy Court. Local Rule 604, however, permits the Court, upon good cause shown, to suspend the operation of any of the Local Rules. As the standards for suspension of the automatic referral and withdrawal of a referral under 28 U.S.C. § 157(d) are identical, the

Court concludes that the "good cause" standard guides its exercise of discretion here.

2. The fact that the resolution of a case "may be affected by State law" is not itself sufficient to justify classifying a proceeding as "non-core." 28 U.S.C. § 157(b)(3).

of this case would nonetheless be limited by that Court's power to conduct a jury trial.

The *Granfinanciera* Court expressly declined to decide whether a Bankruptcy Court has the power to conduct a jury trial, and the Circuits have split on the question. *See In re United Missouri Bank, N.A.*, 901 F.2d 1449, 1456 (8th Cir.1990) (holding that the Bankruptcy Court has no such authority); *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1404 (2d Cir.1990), *vacated and remanded on other grounds,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *on remand,* 924 F.2d 36 (2d Cir.1991) (holding that the Bankruptcy Court may conduct jury trials in core proceedings). While the Fourth Circuit has not yet addressed the question, the Bankruptcy Courts of this District have held that they lack such power. *See In re Devitt,* 126 B.R. 212 (Bankr.D.Md.1991); *In re Brown,* 56 B.R. 487 (Bankr.D.Md.1985).

Even if the Court were persuaded by the Second Circuit's reasoning that the Bankruptcy Court could conduct a jury trial in a core proceeding, there is no authority, and the defendants present no argument, to support such power over non-core proceedings. The Court therefore concludes that the Bankruptcy Court lacks the power to conduct a jury trial in this case, and that any referral would have to be withdrawn when the case came ready for trial. The question remains, however, whether it would be possible to grant a limited referral for pretrial purposes.

■ Cases addressing this question have reached opposite results. In *In re Novak,* 116 B.R. 626 (N.D.Ill.1990), the Court concluded that under the Eighth Circuit's holding in *United Missouri Bank,* District Courts would be completely precluded from referring to the Bankruptcy Court any non-core actions in which a jury demand had been made, absent consent of the parties. On the other hand, the Northern District of Alabama held in *City Fire Equipment Co. v. Ansul Fire Protection Wormald U.S., Inc.,* 125 B.R. 645 (N.D.Ala.1989) (en banc), that pretrial withdrawal of a referral would

be inappropriate in some cases, even where the District Court would be required to conduct the actual jury trial.[3] The *City Fire* Court reasoned persuasively that the Bankruptcy Judge's pretrial supervision of the case, including rulings on discovery and other nondispositive motions, would not interfere with the right to a jury trial.

■ This Court agrees that the right to a jury trial in the District Court does not automatically prohibit a discretionary referral to the Bankruptcy Court for the limited purposes of pretrial management. The Court therefore concludes that a referral in this case is allowable under § 157, although its scope would have to be limited to nondispositive pretrial matters. The final question is whether the referral would serve any useful purpose.

### 4. Practical effects of referral.

■ Both the *Novak* and *City Fire* Courts recognized that the decision to refer a case or to withdraw a referral is frequently more a pragmatic question of efficient case administration than a strictly legal decision. The *Novak* Court concluded that as a general matter, "when a party to a non-core proceeding stands on its right to trial by jury ... and the parties do not consent to adjudication by the bankruptcy court, it is better for the court to withdraw the referral." *Novak,* 116 B.R. at 627. This Court agrees.

As discussed above, this Court will in all probability be required either to make *de novo* factual determinations or to hold a jury trial in the first instance, whether or not it refers the case to the Bankruptcy Court. Under these circumstances, a referral appears to be a futile detour, requiring substantial duplication of judicial effort and needlessly burdening an already overcrowded docket in the Bankruptcy Court.

The defendants argue that unless the Court refers this action, the debtor partnerships will be "unable to reorganize." This supposed inability is due first to the extra drain on the individual defendants' time

---

**3.** Although the Court in *City Fire* did not purport to apply *United Missouri Bank,* it did proceed on the assumption that the Bankruptcy Court lacked the power to conduct jury trials.

which would result from pursuing litigation in this Court. The Court finds this argument utterly unpersuasive. As the defendants themselves point out, they are not attorneys, and would likely have very little to do with the day to day conduct of this litigation in either forum. The defendants' attorneys have demonstrated the ability to generate ample submissions on short notice without the direct participation of their clients, and the Court is confident that the case will be vigorously litigated regardless of its ruling on this motion. In light of the recent deposition testimony of the individual defendants, the Court simply cannot imagine that the incremental increase, if any, in the time required of the defendants by remaining in District Court for the pretrial phase of this litigation would jeopardize the reorganization in any way.

Finally, the defendants argue that this Court's refusal to grant the referral would jeopardize the success of the bankruptcy plans by subjecting them to potential judgments which would, in turn, adversely affect their ability to contribute to a "capital pool" out of which creditors are to be paid. This argument also fails. Regardless of whether pretrial proceedings take place in the Bankruptcy Court or in this Court, the objective of the action remains the same: plaintiffs seek a judgment against the non-debtor defendants. If the plaintiff is ultimately entitled to prevail, the collateral pool will be impaired regardless of the forum. Only if this action were somehow delayed would a referral act to protect the collateral pool against the possible adverse effects of this action. The Court is therefore not inclined to grant a discretionary referral to protect the collateral pool.

In short, the effect of plaintiffs' jury demand, combined with the non-core nature of this action work to make referral to the Bankruptcy Court a limited and inefficient tool. In the absence of other persuasive arguments on the grounds of judicial economy or administrative efficiency, good cause exists to deny the referral.

Accordingly, it is this 10th day of January, 1992, by the United States District Court for the District of Maryland,

ORDERED:

1. That plaintiff's motion to file supplementary opposition BE, and hereby IS, GRANTED; and

2. That defendants' motion for referral to the Bankruptcy Court BE, and hereby IS DENIED; and

3. That the Clerk of the Court shall mail a copy of this Memorandum and Order to all counsel of record.