**In re BWP GAS, LLC, Debtor.**

**BWP Gas, LLC, Appellants–Plaintiffs,**

**v.**

**The GHK Company, LLC, GHK/Potato Hills Limited Partnership, Brian Egolf, Robert S. May, and Robert Heffner, Appellees–Defendants.**

Civil Action No. 06–106.
Bankruptcy No. 05–18745.
Bankruptcy Adv. No. 05–480.

United States District Court,
E.D. Pennsylvania.

Oct. 23, 2006.

702

Allen B. Dubroff, Elkins Park, PA, pro se.

Howard Gershman, Flamm, Boroff and Bacine, Blue Bell, PA, Reid E. Robison, McAfee & Taft, Oklahoma City, OK, for Appellees–Defendants.

Michael V. Blumenthal, New York, NY, for Appellants–Plaintiffs.

United State Trustee, Philadelphia, PA, pro se.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Appellant-debtor BWP Gas appeals from the bankruptcy court's discretionary abstention from an adversary proceeding and subsequent order to "transfer" the proceeding to a state court. Because the bankruptcy court has no power—statutory or inherent—to send a proceeding to a state court from whence it never came, the transfer order is vacated and the proceeding is remanded to the bankruptcy court to reconsider its options.

## I. Facts and Proceedings

Appellant-debtor ("BWP") and appellees ("GHK") entered into oil and gas exploration agreements in Oklahoma. This relationship spawned two law suits: one filed originally in Oklahoma state court and pending in the Western District of Oklahoma Bankruptcy Court at the time of the opinion below ("The Oklahoma Case"); and the adversary proceeding now before me, commenced by BWP in bankruptcy court after it filed a chapter 11 bankruptcy petition ("The Adversary Proceeding").[1]

The claims and parties in the Adversary Proceeding overlap with, but are not identical to, the claims, counterclaims, and parties in the Oklahoma Case.

About a year before this Adversary Proceeding commenced, GHK filed the Oklahoma Case in Oklahoma state court against BWP and third parties who are not present in this proceeding. BWP removed the Oklahoma Case to federal district court and filed an answer and counterclaim, but the district court remanded the case back to state court. Discovery in the state court proceeded. Several months later, BWP filed for bankruptcy in the Eastern District of Pennsylvania. Soon after the bankruptcy filing in Pennsylvania, GHK voluntarily dismissed its claims against BWP in the Oklahoma Case. This left pending only GHK's claims against the third parties and BWP's counterclaims against GHK. BWP then commenced this bankruptcy court Adversary Proceeding against GHK and two individuals who were not in the Oklahoma Case. On the same day the Adversary Proceeding was filed, BWP removed the Oklahoma Case to the Western District of Oklahoma Bankruptcy Court under the bankruptcy removal statute, 28 U.S.C. § 1452, and moved to transfer the matter to the Eastern District of Pennsylvania Bankruptcy Court.[2] The transfer motion remains pending.[3]

---

1. An adversary proceeding is a separate lawsuit filed within a bankruptcy case to, inter alia, recover the bankruptcy petitioner's money or property or determine its interest in property. Fed. R. Bankr.P. 7001.

2. Technically, a bankruptcy proceeding is removed from the state court to the district court, but the Notice of Removal is filed with the bankruptcy clerk and the matter is docketed in the bankruptcy court as an adversary proceeding. 2 Collier Pamphlet Edition Bankruptcy Rules 702 (Mary Davies Scott, Lawrence P. King eds., 1999).

3. Although not relevant to the discrete issue in this appeal, a more detailed history follows.

GHK is a privately held oil and gas exploration company that explores and drills oil and gas wells. BWP, a limited liability company, was to invest in GHK's exploration and drilling in return for a share of the production. GHK filed suit against BWP and two other defendants who are not parties to this appeal on March 4, 2004 in the state District Court of Oklahoma County. The complaint (called a "Verified Petition") charges that BWP reneged on a May 2003 agreement. Under that agreement, BWP paid six million dollars for the exploration of an oil well ("Mary Well") in exchange for a percentage share in the future production of the Mary Well and an option to buy a share the production wells that GHK

GHK, now as defendants in this Adversary Proceeding, moved for permissive and mandatory abstention under the Bankruptcy Code. Mandatory abstention under 28 U.S.C. § 1334(c)(2) applies only to proceedings where bankruptcy law is the only basis for federal jurisdiction, and where the proceeding "is commenced" in state court and can be "timely adjudicated" there. Permissive abstention under 28 U.S.C. § 1334(c)(1), by contrast, is a broad standard allowing abstention from any bankruptcy proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law."

The court denied mandatory abstention, but granted permissive abstention. However, the court did not then stay or dismiss the case. Instead, concerned that the statute of limitations might bar BWP from refiling in state court if the Adversary Proceeding were dismissed, the court ordered that the case "is transferred to the District Court of Oklahoma County." The

court reasoned that the filing of the Oklahoma Case in Oklahoma state court gave that court "some prior connection to the litigation" sufficient to justify the transfer of the Adversary Proceeding there—despite the fact that, as the bankruptcy court recognized, the Adversary Proceeding and the Oklahoma Case were "not identical." The court concluded that "the fairest remedy to all parties is to utilize my equitable powers under abstention and transfer this lawsuit to the District Court of Oklahoma County."

To summarize: the Pennsylvania Bankruptcy Court had before it the Adversary Proceeding, which had never been filed in state court; the Oklahoma Bankruptcy Court had before it the Oklahoma Case, which had been removed from state court and contained claims overlapping with the Adversary Proceeding; and no claims at all were pending in the Oklahoma state court. A timeline with exact dates follows below.

explored in the area in the future. The May 2003 contract also contained a sub-agreement hinging on conditions precedent: once the Mary Well was producing at a certain level and work on the next well was underway, BWP would tender 2.5 million shares it possessed of a company called CSOR. According to the contract, CSOR "intends to acquire a majority of the membership interest" in BWP. This acquisition was presumably how BWP was to obtain possession of the CSOR shares. The heart of GHK's state court case is that although it fulfilled the conditions precedent, BWP never transferred the shares of CSOR.

BWP removed the case to federal court under diversity jurisdiction and filed an answer and counterclaim. BWP answered GHK's claim by arguing that the conditions precedent in the May 2003 contract had not been met: the Mary Well was not producing gas at the agreed-upon levels, and BWP had never received the stock from CSOR. BWP's counterclaims focused on an earlier agreement from February 2003. Under the February agreement, BWP was to raise $5 million to buy into GHK's oil wells. However, after BWP had already given $2.5 million to GHK,

GHK fraudulently prevented BWP from raising the remainder of the capital. The failure of the February deal forced BWP to enter into the May 2003 agreement (the subject of GHK's initial claim) because otherwise BWP would have lost the $2.5 million it had already invested. BWP also counterclaimed that GHK had fraudulently misrepresented the potential productivity of the Mary Well.

While the state court case was proceeding, BWP filed for bankruptcy in the Pennsylvania bankruptcy court and initiated this adversary proceeding against GHK and two of its officers, who had not been parties in the case filed in state court. The adversary proceeding consisted of a claim regarding the February 2003 agreement—substantially the same as BWP's counterclaims from the state case—saying that the interest in the Mary Well they paid $6 million for was only worth $100,000, and that GHK had misled them as to the potential value. The adversary proceeding also includes claims for three additional wells (not at issue in the state court) that BWP says it purchased interests in after GHK's misrepresentation of their value.

| | Oklahoma Case | Adversary Proceeding |
|---|---|---|
| 3/4/04 | GHK files in Oklahoma state court against BWP. | |
| 4/6/04 | BWP removes to federal district court. | |
| 4/13/04 | BWP files answer and counterclaims. | |
| 10/21/04 | Federal district court remands to Oklahoma state court. Discovery proceeds. | |
| 6/27/05 | | BWP files bankruptcy petition in Pennsylvania bankruptcy court. |
| 7/22/05 | GHK voluntarily dismisses claims against BWP. BWP's counterclaims remain. | |
| 7/26/05 | BWP removes counterclaims to Oklahoma bankruptcy court and requests transfer to Pennsylvania bankruptcy court. | BWP files adversary proceeding in Pennsylvania bankruptcy court against GHK and two additional parties. |
| 12/2/05 | | Pennsylvania bankruptcy court transfers adversary proceeding to Oklahoma state court. |

BWP now appeals the bankruptcy court's permissive abstention and transfer order to the state court. It asks this Court to set aside the transfer order and remand to the bankruptcy court to decide the abstention motion; or in the alternative to review and reverse the decision to abstain.

## II. Jurisdiction

Pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr.P. 8013, this court has appellate jurisdiction over the bankruptcy court's final judgments and orders. The decision to permissively abstain and transfer the case are final orders reviewable by the district court. 28 U.S.C. § 1334(d); *In re Federal–Mogul Global, Inc.* 300 F.3d 368, 388–89 (3d Cir.2002) (citing legislative history establishing that bankruptcy court decisions to abstain are final orders reviewable by the district court).

## III. Standard of Review

In reviewing a bankruptcy court's decision to abstain, the district court sits as an appellate court and applies the appellate standard of review generally applicable in federal courts. 28 U.S.C. 158(c)(2) (appeals "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts.") However, the circuit courts generally do not provide guidance on the district court standard of review of a bankruptcy court's decision to permissively abstain, given that such decisions are not reviewable in the circuit courts. 28 U.S.C. § 1334(d). As such, the best guidance is Third Circuit case law on non-bankruptcy abstention doctrines. Accordingly, whether the court erred in exercising its authority to permissively abstain is reviewed for abuse of discretion. *Trent v. Dial Medical of Florida, Inc.*, 33 F.3d 217, 223 (3d Cir.1994) *(Colorado River* abstention). Whether the bankruptcy court had the authority under the abstention statute to transfer the case to state court is a question of law reviewed de novo. *Id.*

## III. The Transfer Order

The bankruptcy court lacked authority, statutory or otherwise, to order the case transferred to state court. There are only two mechanisms by which cases may be sent from a federal district or bankruptcy court to a state court: remand to the state court from which the case was originally removed; or transfer of the case to a state court pursuant to a state statute enabling such transfers. *See Allied Signal Recovery Trust v. Allied Signal, Inc.*, 298 F.3d 263, 270 (3d Cir.2002) (remand must be to state court of original jurisdiction); *Weaver v. Marine Bank*, 683 F.2d 744, 746–748 (3d Cir.1982) (transfer must be enabled by state statute); *Bradgate Asso-*

*ciates v. Fellows, Read*, 999 F.2d 745, 751 n. 5 (3d Cir.1993) (same). Because the adversary proceeding was never filed in state court and Oklahoma lacks a law permitting transfer, neither route to state court is available.

## A. Transfer

■ The bankruptcy court held that it had the power to transfer a case to a state court where the case had never been filed, but which had "some prior connection to the litigation." The "prior connection" in this case was the fact that the Oklahoma Case, with claims and parties partially overlapping the Adversary Proceeding, had been originally filed in the Oklahoma state court to which the bankruptcy court would now transfer the Adversary Proceeding. The Oklahoma Case was no longer in the state court to which the Adversary Proceeding would be transferred, as it had since been removed to the Oklahoma Bankruptcy Court.

In support of the "some prior connection" standard and the expansive view of its "equitable powers under abstention," the bankruptcy court drew on case law on the intersection between remand and abstention, citing *Allen v. J.K. Harris & Co.*, 331 B.R. 634, 639 (E.D.Pa.2005). The bankruptcy court characterized the *Allen* court as holding that "permissive abstention under section 1334(c)(1) affords a bankruptcy court the power to transfer a proceeding to a state court that had some prior connection to the litigation." But *Allen* does not apply, even by analogy, to the present case: *Allen* (and the line of cases it invokes) deals only with remand of

properly removed cases. Whether a case can be transferred to a state court that is a stranger to the case cannot be extrapolated from that discussion. Transfer involves a different set of considerations, which the Third Circuit has fully addressed in *Weaver v. Marine Bank*. *Id.*

In *Weaver*, the appeals court established that transfer from a district court to a state court, when the case was not originally removed from that court, is impossible without a state court enabling statute. The *Weaver* plaintiffs had brought a securities fraud suit in federal court alleging violations of Pennsylvania and federal law. 683 F.2d at 745. The appeals court found no federal cause of action, no diversity, and no basis to retain jurisdiction over the remaining state law claims. *Id.* at 745–46. Had the court simply dismissed the state law claims for lack of jurisdiction, however, the plaintiffs would have been time-barred from refiling in Pennsylvania state court under the state law statute of limitations then in effect. *Id.*

Fortunately for the *Weaver* plaintiffs, the appeals court availed itself of a then-existing Pennsylvania statute designed to preserve state law claims from statute of limitations violations in such cases. The statute directed that the federal court "shall not ... dismiss the matter," and instead should transfer the case to the state court where "the matter shall be treated as if originally filed in the transferee court." *Id.* at 746 n. 1.[5] The *Weaver* court found that a state enabling statute was essential to allow a federal court to transfer the case to the state because

---

**5.** In *Weaver*, Judge Sloviter voiced serious concern about the constitutionality of the decision, arguing that a federal-to-state transfer requires a federal enabling statute. *Weaver*, 683 F.2d at 751–52 (Sloviter, J., dubitante). The Pennsylvania law has since been amended to allow the litigants themselves to file their cases in state court after federal court

dismissal, rather than instructing the federal court itself to transfer the case. *See McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 430–31 (3d Cir.1983). This amendment appears to remove the constitutional problem Judge Sloviter identified, since the new state law does not purport to mandate federal court actions.

"such a transfer ... is an exercise of a power granted not by federal, but state, law. Jurisdiction of a federal court is dependent upon federal statutory authority, but that principle does not control the issue here." *Id.* at 746.

In this case, there is no Oklahoma statute akin to the Pennsylvania statute that enabled transfer in *Weaver.* Oklahoma does have a "savings statute" that tolls the statute of limitations for one year to permit refiling after an initial case fails "otherwise than upon the merits." 12 Okl. St. Ann. § 100.[6] But the law has no provisions that would allow direct transfers from federal courts. What's more, because the Oklahoma Supreme Court has ruled that the Oklahoma savings statute only applies to cases filed originally within the state, BWP, who filed originally in Pennsylvania, would be unable to use it even if the federal case were dismissed. *See Morris v. Wise,* 293 P.2d 547, 550–51 (Ok.1955).

■ Thus, not only did the bankruptcy court lack the necessary state enabling statute for a transfer required by *Weaver,* but the transfer would actually circumvent Oklahoma's statute of limitations and savings statute designed specifically for such cases, forcibly enlarging its jurisdiction. Indeed, the bankruptcy court stated that it elected to transfer the case precisely in order to get around the Oklahoma statute of limitations. But a federal court has no inherent or "equitable" power to transfer a case in a manner inconsistent with a statute or rule. *Moravian School Advisory Board v. Rawlins,* 70 F.3d 270, 274 (3d Cir.1995). The federal imposition of state court jurisdiction over a state claim, when the state would not otherwise take jurisdiction and the case has never been filed in state court, would elbow into the state's sovereignty. Contrary to the bankruptcy court's assertion, the power to abstain does not give it the power to create state court jurisdiction.

**B. Remand**

■ The bankruptcy court never characterized its action as a "remand," but appellees GHK nevertheless argue that remand is available, or that the transfer can be called a remand. They posit that the bankruptcy remand statute, transfer of venue statute, and transfer of venue rule combine with 11 U.S.C. § 105(a), which gives the bankruptcy court power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," to create an altogether new "remand" authority. Appellees' Br. at 9–10 (citing 28 U.S.C. § 1452, 28 U.S.C. § 1412, Fed. R. Bankr.P. 7087, and 11 U.S.C. § 105(a)). This argument for statutory spontaneous generation is implausible at best.

■ "Remand means 'send back.'" *Allied Signal,* 298 F.3d at 270 (citing *Bloom v. Barry,* 755 F.2d 356, 358 (3d Cir.1985)). A court cannot "send back" a case to a court it never came from. Nor does 11 U.S.C. § 105(a), a broad provision on the power of the bankruptcy court, authorize this novel procedure. Section 105(a) is not a grant of unlimited equitable power to the bankruptcy court, but rather grants only the powers "necessary or appropriate to carry out the provisions" of the bankruptcy code. The bankruptcy

---

6. The full text of 12 Okl. St. Ann. § 100 reads: If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

code contains specific provisions allowing for venue transfer and remand of cases, none of which authorize the remand/transfer proposed by GHK. *See* 28 U.S.C. 1452(b) (bankruptcy remand); 28 U.S.C. § 1412 (bankruptcy venue transfer). Section 105(a) cannot operate to create such an extra-statutory mechanism. *Cf. In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir.2000) ("[S]ection 105(a) has a limited scope. It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code") (internal quotation marks omitted).

### III. Abstention

 When deciding whether to exercise its authority to permissively abstain, the bankruptcy court must consider "the interests of justice ... comity ... or respect for State law." 28 U.S.C. § 1334(c)(1). Those interests cannot be weighed without knowing the consequences of the abstention. The bankruptcy court's chosen outcome—transfer to the state court—has now been foreclosed. Because abstention is committed to the bankruptcy court's discretion, and that discretion cannot be meaningfully exercised without knowing the possible trajectory of the case after abstention, the proceeding should return to the bankruptcy court to reconsider all its options.

### ORDER

This 23rd day of October, 2006, **IT IS ORDERED:** The Bankruptcy Court for the Eastern District of Pennsylvania's December 2, 2005 Order transferring the adversary proceeding (Bankr.Adv. No. 05–480) to the District Court of Oklahoma County is vacated and the proceeding is remanded to the bankruptcy court to reconsider its options.